from the United States District Court for the Eastern District of Pennsylvania. We're honored to have Judge Slomski with what I understand is his inaugural sitting with the Court. Yes. And as the litigants may be aware, the Court relies heavily and gratefully on the assistance of our friends and colleagues on the District Courts and from the other circuits, and we're very fortunate to have Judge Slomski. I want to also thank Judge Roof in absentia. Because of my oversight, I was so eager to get into the first two cases, I forgot to thank her publicly, but we're grateful for her assistance as well in this sitting. If counsel are ready, we'll start with United States v. Bartolo Perez. Ms. Kaslin, did I pronounce that correctly? That's good enough, Your Honor. Is it Kassel? Kassel. Kassel. Well, you can correct me. I don't want to get it wrong next time, so welcome. Your Honors, may it please the Court. My name is Susan Kassel, and I represent Bartolo Perez on this appeal. I would like to reserve three minutes for rebuttal time. Granted. This Court should reverse the defendant's conviction and the dismissal of the indictment and the failure to dismiss the indictment in this case for two principal reasons. Ineffective assistance of counsel in the immigration proceeding and the attendant prejudice by that ineffective assistance of counsel violated the appellant's due process rights in that proceeding, and the District Court erred in finding that the defendant had not shown a likelihood of success on the merits with regard to his prejudice claim. What is the prejudice claim? That relief would have been granted, correct? That he would have had a likelihood of success on the merits had he had an opportunity to present his case for a 212C waiver before the Immigration Court and or the BIA. Let me just ask a preliminary question, one that has not, as I see it, been briefed, although the briefs are long. We held in U.S. v. Torres that an alien does not have a due process right to be considered for discretionary 212C relief because it's available only as a matter of legislative grace. So if there's no due process right to be considered for 212C relief, why would there be a right to effective assistance of counsel in pursuit of 212C relief? Well, Your Honor, because since the Torres case, other courts, and including courts from this circuit, have seemingly departed from such a strict analysis. Well, there's a circuit split on this issue, I would suggest. For example, this court in the Ransche case, well, in Richardson, this court held that it was an open question as to whether an alien could establish prejudice by showing a likelihood of success on the merits before the Immigration Tribunal. I don't know that that was my question. Pardon? I don't know that that was my question. I'm sorry, Your Honor. Do you have a right to effective assistance of counsel, period, in a 212C situation? Yes, Your Honor. And that comes from the Mendez-Lopez Supreme Court decision, which held that an alien does have a right to collaterally attack an order of deportation where he has exhausted his administrative relief. In a removal proceeding, but this is a 212C. There is a distinction. I don't want to belabor this. Well, Your Honor, we would argue that a 212C application, although discretionary, we're not before the court saying that this court must grant him 212C relief. We're merely saying that he never had an opportunity before the Immigration Tribunal to make a valid 212C application. And we have no idea whether that application would have or would not have been successful. Well, Your Honor, we don't have any certainty as to whether it would have. However, if we look at the two prongs of the test of ineffective assistance of counsel on the one hand and prejudice on the other, I think we have certainly established at least the threshold for showing that he had a likelihood of success. For example, to show ineffective assistance of counsel, an alien must show that any reasonably competent attorney would have done that which the alien claims was not done here. Now, a 212C application, contrary to what government counsel asserts, is a most simplistic application. It is not a time-consuming, intensive, exhaustive legal treatise, particularly in this case where this was based on the acquisition of seven years of residence. And all that Mr. Klefeld, the Immigration Counsel, had to do was to essentially file a piece of paper which attached the relevant document when he was in the United States. But how do we even know he was counsel of record at that time? Well, Your Honor, that... There's tremendous speculation we'd have to engage in in that regard, wouldn't we? Your Honor, I don't believe so. I think that it is very clear that when an attorney files a notice of appearance to appear in a proceeding, that attorney is the attorney of record in that case unless and until a court relieves him. When he said we're not filing a brief, didn't he? He said we're not filing a brief. That's correct. The reference there is I guess the client didn't pay him to file a brief. They decided not to. Again, myriad speculation as to what might have... Sorry. Possibly, Your Honor. But this is an attorney who has been suspended from practice. Oh, no, that's not the answer. That's not really responsive. Well, fine. To respond directly to the case... You know the response should be here. And it's just the silence on this issue is deafening on both sides. I think the government gets to it at page 20 of a 57-page brief. The matter of Lozada requirements when you're alleging ineffective assistance, the affidavit that is required under Lozada to show the scope of the representation, to notify counsel that an allegation of ineffective assistance is being made against him. But we have nothing in this record that shows the scope of his representation. You speculate that maybe because he filed a notice of appeal, he is bound ethically or whatever to continue to represent. Well, we don't know that. And we have very specific procedural requirements. To show ineffective, you must show both we have procedural requirements and substantive requirements. And this case is all about the substantive requirements. Nobody other than the government mentions at page 20 the affidavit, which I've just alluded to. But that's really all. Judge Walls never dealt with the procedural requirements. I just wonder why this is lacking here. Well, Your Honor, there are cases that relax the Lozada requirements in certain circumstances. In this case, Mr. Perez did not even know that there was an order of deportation against him until the moment he was arrested in Boston in 2007. Well, wait. Why is that? I mean, the notice was sent to his lawyer. And I thought the case law establishes that notice to counsel is chargeable to the client. Well, Your Honor, the period of time that elapsed, Mr. Perez was in this country from 1981 to 2007. And while it is true that there was an order in 1990. Deportation. Right. The fact of the matter is that from 1990 through 2007, Mr. Perez was allowed to travel to the Dominican Republic and return twice. So the government's intransigence or incompetence is the key to his victory here then? No, Your Honor. Because in addition, they returned his immigration bond. So consequently, there was a real affirmative act on their part. What does that have to do with ineffective assistance of counsel? Well, he thought that his immigration proceedings had concluded in his favor. And he knew nothing from his attorney to the contrary. What would have led him to reasonably conclude that? That his immigration bond was returned and that he traveled out of the country twice after, allegedly, there was a final order of deportation. He knew in 2007 for sure that he was ordered deported. That is true. And he was, in fact, not only was he deported, Your Honor, but he was not even deported from an area in which he had any familiarity. He was arrested in Boston and shortly thereafter spirited up to Maine, where he had no support systems, no relatives. All right. And then he's sent to the Dominican Republic where he does have relatives. Well, no, Your Honor. No? He's not from the Dominican? He is from the Dominican Republic. And his trips back to the Dominican Republic, one of which is what occasioned his arrest in the first place, was to visit his ailing mother. But she passed on, and he has no – all his American citizen or LPR wife and two American citizen children are in the United States. All right. But he's deported in 07 to the Dominican, right? He's deported in 07. And he's in the Dominican Republic. Yes, Your Honor. And instead of seeking moving to reopen or otherwise seek judicial review of his 1990 deportation order, instead of doing that, he illegally reenters the United States. He is not able to proceed administratively before the Immigration Service while he's out of the country. He could have filed the same type of application that he filed in this case from the Dominican without trying to – he didn't have to illegally – or maybe you're telling us otherwise. You're saying he had – his illegal reentry to the United States was a precondition to him being able to challenge the validity of his 1990 deportation order? His only recourse before the agency was to be in the United States. I'm not just limiting it to the agency. I'm saying challenging it in any way, shape, or form. In the federal court system, I mean, he had to illegally reenter the country in order to have his day in court and be heard? Your Honor, it was his understanding that while out of the United States, in order to challenge the underlying proceeding – after all, he had already appealed his case to the BIA, and it had been decided either in 1990 or in 1997, whichever date we use for the final order. And in that opinion, the BIA telegraphed its concern about this case. When he came back to the United States in 2009, what was his knowledge in terms of what deportation order had sent him out of the country? What did he know? By 2009, from 2007, he knew that there was a – In 2007, he was sent out of the country. And he knew then that there had been a final order of deportation, which allegedly was authored in 1990, but which was not effectively processed or effectuated until 1997. And in 1997, was there an order – there was an order of deportation in effect, but that was the first time that the government ordered a – entered an order of deportation or reinstated the order of deportation. What happened in 1997? In 1997, Mr. Perez was blissfully unaware of that. He had thought his immigration proceedings had concluded in his favor. He no longer was at the address in the Bronx where he had lived at the beginning in – 10 years earlier, actually, in 1987. What is the relevance of that? I mean, what is the relevance of that for purposes of either illegal reentry after a deportation order in 2007 or attempted illegal reentry or ineffective assistance as to the initial order of deportation? I believe I was answering Judge Slomski's question as to how it is he didn't know about it. And he didn't know about it because – But why does it – does that help you, though? I mean, we decided way back in 1990 in CWAC versus INS, and I'm quoting, where an alien is represented by counsel, notice to counsel is deemed to be notice to the alien. I mean, so he can't – as I understand that precedent, he can't hide behind the fact that, well, my lawyer may have gotten some paperwork, but I didn't know anything about it. That's unavailing to him, isn't it? Well, Your Honor, I would respectfully disagree, since we are arguing ineffective assistance of counsel from the moment that Mr. Klefeld failed to move to reopen before the – at their invitation or to remand to make a properly situated 212C application. That ineffective assistance of counsel began then, and it continued throughout the course of what seemed to be a one-sided relationship of Mr. Perez trying to find out what occurred in his case,  So when does he first learn of the 1990 deportation order? The first he learned of it was the moment he was arrested for a speeding ticket in Boston in 2007. All right, so he learns about the 1990 deportation order in 2007 in Boston. Then he is sent to the Dominican Republic in 2007, and while in the Dominican Republic he does nothing of a judicial nature. There's no effort for him to take any steps to invalidate that 1990 deportation order, which he now is well aware of. Instead, he illegally reenters the United States. Your Honor, my point remains that unless an alien is in the United States, they do not have the ability to reopen their proceedings. Judicial review. I'm talking about judicial review. You're very careful, and I respect your candor because you've been very adept at pointing out that he may not have had administrative opportunities available to him. But that doesn't preclude the opportunity to be heard judicially in a court of law. This is a criminal case that's in front of us. Yes. In 13-2016, does it give him the right to collaterally attack his conviction by showing a reasonable likelihood that he was deprived of effective assistance of counsel in the deportation proceeding? Yes, Your Honor. 13-2016 absolutely does give him the right to do that, but I believe Judge Hardiman's question is that before there was a criminal proceeding against him for reentry and while he was in the Dominican Republic, why did he not avail himself of the... Even before he was deported to the Dominican Republic, I believe there was a five-month period of time between the order of deportation and the act of deportation. So he was here for five months where he could have done something and did not. Well, Your Honor, he did not do anything. But it is true that a motion to reopen the case was not filed. By who? We don't know how long Kleefeld represented him. We don't know if he represented him one day after the notice of appeal to the BIA was filed, way back in the dark ages. We don't know that because the Lozada requirements were not complied with. Your Honor, what we do know is that the BIA sent both the letter extending the time to file a brief or to move to reopen to Mr. Kleefeld as the designated attorney for the alien and they sent the order which affirmed the immigration judge and they noted in the order the respondent did not file a brief on appeal and although it has now been more than seven years since his admission as a lawful permanent resident, he has not filed a motion to remand. Neither has he filed an application for a section 212C relief or any other supporting materials to establish a prima facie eligibility for such relief. As the respondent is clearly deportable from the United States and has not applied for any relief from deportation, the appeal is dismissed. His appearance was ended before the Board of Immigration Appeals, correct? Yes, Mr. Kleefeld's appearance was noted and unless a court of competent jurisdiction relieves him of the obligation to ethically and legally represent a client to the best of his ability, he is the attorney. He's the attorney of record and he has the responsibility to the client. That's right and he was woefully incompetent in failing. So his engagement is ad infinitum? When does his engagement end? He could have made a motion to be relieved of counsel before the board. This court is, I think, all too familiar with attorneys who seek to... My question is when does... you're saying that his engagement continued beyond the time that he wrote and said we're not filing a brief, correct? I think it continued, certainly... When does it end? A period after he received the decision from the BIA. We don't know he received it. Well, it was sent to him. It was sent to Mr. Kleefeld as the attorney, so presumably he received it. If he received it... Right, even if the engagement had terminated, he still had an ethical duty to convey the order of deportation, the fact of its existence to the former client, right? Absolutely and with regard... And then where does it ever end? Does it go beyond that or the engagement? I don't think we have to speculate as to how far further it goes. It certainly goes to then. It certainly goes to receiving the opinion of the BIA and then conveying it to the defendant. After all, the defendant had from 1990 to 2007, but accepting that the order may be to 1997, he at least had nine, if not 17 years, in which he could have done all the things that the court has inquired about. He could have obtained an attorney, moved to reopen to present the evidence which we believe would clearly have shown a likelihood of success... the prejudice he would have been able to show... Clearly would have shown he would have been granted what is admittedly a matter of executive branch grace. And it is, according to this court, the standard is not that stringent for showing likelihood of success and he had many, many factors in his favor. The only negative factor was, of course, his 1987... Drug smuggling. Yes, but, Your Honor, even as to that, it is pretty clear that there were the most unique and coercive circumstances. No, we don't know that. They weren't presented to the immigration judge. Right. That is correct, Your Honor. They were not. But the probation officer went out of his way to submit material to the immigration court, which is not, I believe, the norm, which explained how Mr. Perez had lived really an exemplary life. And noting that when he was picked up for a speeding ticket in 2007, he had not had even a speeding ticket. Between 1990, when the government alleges that the order of deportation became final, and 2007, he lived a blameless life in this country. All right. Thank you. We'll hear you on rebuttal. Thank you, Ms. Cassell. Thank you. Mr. Sanders. Good morning. May it please the Court, I'm Assistant United States Attorney Stephen G. Sanders on behalf of the United States, the appellee in this matter. Let me start off first, Judge Barry. I will endeavor to write shorter briefs. No, it wasn't a complaint about the length of the brief, necessarily. It was the lack of emphasis on what I consider to be or would have considered to be a strong argument. And it is my first point when I get to my argument section, and let me start there because it underscores the entire problem with the argument we just heard from Ms. Cassell, and that is all of what she has told you, except the probation letter, there's no evidence in it of the record. It comes from Ms. Cassell's say-so. In other words, there is no evidence about what her client knew and when. The argument that her client didn't learn until he was arrested in 2006 is something she asserted in a brief without any affidavit, without any proof, and is now relying on her unsworn assertions from her motion in the district court as evidence in this court. That's just not sufficient. In terms of the Lozado, in the Fadiga case from the circuit, I thought I read language by Judge Pollack who wrote the opinion that we shouldn't apply that too restrictively if an applicant can give some explanation as to why that affidavit wasn't filed. In this case, the claim is that he didn't know about the 1990 proceeding before the Board of Immigration Appeals where his lawyer could have presented to the board the balancing factors, this request for 212 relief. Isn't that the case? Two responses to that. I believe Fadiga says that you can relax the third requirement of the Lozado test, which is the failure to file a bar complaint against the attorney, in other words, ethics charges. There are three requirements. You have to file an affidavit setting forth what the retainer agreement was. In other words, you have to swear under oath that you, in fact, agreed with your attorney that your attorney would do X, Y, and Z, the very thing you're claiming he or she failed to do. That's requirement number one. Number two is you have to give notice to the attorney and an opportunity for the attorney to respond. Those two are usually not relaxed. The third one, that is, to file an ethics complaint or provide a reasonable explanation for not doing so, it's the third one that's relaxed. But if you have an attorney representing you in a proceeding and your attorney never lets you know about what's going on in the proceeding, how can you have knowledge about what the proper procedure is? Isn't that the defense in this case? No, but the assertion in this case from counsel is that the client didn't know, but there's no proof in this record that that's true precisely because no evidence of record. We have a counsel's argument that he didn't know. Right. And I have no, I'm not. It might be true. It might be true. But you're saying that's not what we call evidence of record. Exactly. Or it may be that there was, as I speculate, and it's speculation but it's supported by the record, there may well have been an agreement. The immigrant may have run out of money. He may have said to his attorney or his attorney may have said to him, I'll file a notice of appeal for you. I'll keep the case alive, but you're on your own. You know, you were stating there you heard you'll be eligible for 212C relief as of August 1st, and at that time you've either got to file it pro se or you've got to hire another lawyer. That may be the agreement. In the context of this case, why isn't it ineffective assistance for counsel for a lawyer not to make a request, who has his appearance entered, to make a request before the board on appeal, the immigration board on appeal, to follow the 212 waiver? It's mind-boggling that a lawyer wouldn't do that, who has his appearance entered in the case, and that excuses are being made for the lawyer's conduct. I'm not making excuses for the lawyer's conduct. I have to know what the agreement was under the Lozada requirements in order to understand it. But let me make a response to that. If I am an attorney in a civil case, let's say I've defended after a civil trial and my client got socked with a $2 million judgment, and I'm hired to do the appeal. If during the course of that appeal I discover evidence outside the record that shows that the plaintiff defrauded the court and got a judgment that the plaintiff wasn't entitled to, that's not something I can raise on direct appeal. I have to file a Rule 60B motion. But that may well not be within the scope of what I was supposed to do on appeal. So as an attorney, what I do then, I either have to tell the client, I give the client the information, and I say, if you want me to file a Rule 60B motion, you've got to pay me to do it. If you don't want to, I'll handle the appeal, but you're on your own with respect to the Rule 60B. And the assertion here – But you still have your appearance entered, and if something happens in the case which is incredibly favorable to the client, doesn't an attorney have an obligation to notify the client about that fact? I agree with that absolutely. But there's no proof in this record that the attorney didn't inform the client. That's all attorney hearsay through Ms. Cassell's unsworn assertions in her brief and her argument here. There's never been an affidavit filed by Mr. Perez stating that this is what happened to me. Let me ask this question. The district court judge in this case applied a but-for test in terms of the prejudice against – after finding that – after putting himself in the shoes of the Board of Immigration Appeals and saying that he wouldn't have won in that proceeding. Does that legal test comply with the standard for ineffective assistance to counsel, which is a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred? I think the prejudice test is similar to the one that's applied in Strickland, but with one modifier because of the – now I want to preserve my argument that there's no prejudice here as a matter of law, but assuming that this is cognizable prejudice because of the discretionary nature of the relief plus the fact that there is a serious drug offense, I think you have to make what's called a strong showing. That's at least the standard that the Second Circuit in Perez applies. So it's not just prima facie eligibility. You have to make a strong showing, and therefore that there's a reasonable probability that he could have made a strong showing of 212C. What is our standard on review? In other words, do we have the right to look at the factors and say the judge was wrong? We believe that there was a reasonable likelihood that the result could have been different? Your standard review is plenary, and you could do that, but I would just ask this court to consider one thing. Many of the factors that were put forward as mitigating factors or factors in Mr. Perez's favor are all things that accumulated after 1990, and those are, as a matter of law, improper factors to consider. In other words, most of this claim of equities is based on equities that accrued after the BIA affirmed the order of deportation, and the Second Circuit has a couple of cases. I think Copeland and Scott make clear that the claim of prejudice has to be analyzed as of the time the act that the attorney should have been taking. In other words, as of, I assume, August 1st, 1988, if he should have filed a motion to remand, then we look at what the motion to remand and the 212C application would have looked like as of that date. And as of that date, what did he have? He had seven years in the United States. He had committed a serious drug offense within the first four years, and he had crossed the seven-year threshold by taking an appeal that the BIA found was meritless. Based upon the decision of the Board of Immigration Appeals in 1990, why don't we look at it from the perspective of 1990? Because they said in the opinion that counsel never moved to remand or reopen or presented any evidence to us. So why don't we look at it from the perspective of 1990 when he's now in the country for nine years? And he's done all these good things and had a letter from the probation officer, and he was working, he had a family, et cetera. And he had an explanation that could have been presented in 1990 after the seven years had passed as to the reason why he committed the crime. Well, we can look at it as of 1990, but it doesn't make this any better of a case from the defendant's point of view. Because he would have had a couple more years of employment, I assume. But this points up another issue that Your Honor raised. The reason why the defendant committed the offense is these assertions of duress and all that, again, appear nowhere in the record. They simply were asserted in Ms. Cassell's motion to dismiss in the district court without citation to any evidence and then repeated in her brief on appeal. It's clear that the probation office wrote a letter on his behalf, but let's look at that letter carefully. He was on supervision for about seven months when they wrote that letter. He had gotten employment only two months earlier. So based on that and two months of employment, they wrote a letter urging, you know, that the immigration authorities look favorably on his petition. That's in the record, but it's not as favorable as Mr. Perez makes it out to be. And the other factors that I cited too, the serious drug offense committed within a short time of where I went to the U.S., plus filing an appeal, the sole purpose of which appears to be, from an objective review of the notice of appeal, appears to have been to drag this thing out. Well, that's fine. That's effective assistance. Yeah, that's just good lawyering. I mean, I don't know how you can hold that against them. I mean, anything you can do that's legal and ethical to get you across the seven-year threshold is perfectly kosher, isn't it? Not according to an eight-nothing opinion of the Supreme Court in 1985. I mean, they confronted this very issue. The Supreme Court said you're not allowed to do that? You're not allowed to try to achieve your seven years to make yourself potentially eligible for 212 relief by exercising your constitutional right to an appeal? Well, it's not a constitutional right. I'm sorry, statutory right. Statutory right. And, no, what they said is, if the BIA declines a motion to reopen even for the most favorably situated alien and they decline that motion because that alien crossed the seven-year threshold only by taking meritless appeals, and that's what dragged out the time, that is absolutely within the BIA's discretion. Now, I agree, that doesn't mean it mandates. Well, that just means they might deny his 212 request, right? No, they might deny a motion to reopen even to have it considered. And I want to respond to that as well. A motion to remand, in this case a reopen, would not have been an extensive document, but the 212 application would have required a hearing with evidence, with testimony. That would have entailed significant resources. So I think the ‑‑ So is the crux of your argument, then, that we should not assume that this lawyer was engaged to work pro bono to do what was needed to try to put together a 212 application? Not without the affidavit that Lozada requires. In fact, if ‑‑ But we've never applied Lozada to this type of procedural posture, have we? In 13-2016, no. But let me give you a reason why I think it should apply, and this goes back to the questions you had of Ms. Cassell regarding what happened between 2006 and 2007. He had five months, as Judge Barry pointed out, in which, and I wrote in my brief, if you thought you had been in this country legally, living blissfully and legally for 16, 17 years, and you suddenly got picked up and put in immigration custody, one would think that you would start filing motions, you could apply, file a motion to reopen, you could file a habeas petition and seek a stay of deportation. He did none of those things. If he had moved to reopen at that time, he would have been subject to Lozada requirements, and he bypassed that opportunity, and we say failed to exhaust, and instead is trying to get a better standard of review, effectively. So in 2007, when he's about to be shipped out of the country, he should, at that time, step forward and say, look, the premise upon which you're deporting me is invalid. Right. He had five months. He was picked up in 2006, and he wasn't, in November of 2006, and he wasn't sent out of the country until April of 2007. And what do you concede he could have done then to vindicate his rights? He could have filed a motion to reopen with the BIA on the basis of the very ineffective assistance of the council claim he's pressing here. But had he taken that route, he would have had to satisfy at least the first two Lozada requirements, and we would have had a sworn affidavit setting forth exactly what happened. And now, because he chose not to do that and to illegally reenter, and then to file a 13-2016 motion, he's seeking to rely on solely the fact that this attorney remained in place for him and had the court assume just as a matter of law almost that there was a duty up by this attorney to follow through and file the motion to remand when we have no idea. And this is sort of a rearguard attack on Lozada itself because in Lozada, the attorney actually filed a notice of appeal and checked off the box saying, I'm going to file a brief, and didn't do it. And on appeal to the BIA for denying the motion to reopen, the BIA says the failure to file the brief alone cannot be negligence or deprive the alien of due process rights. And then they went on to promulgate the factors. The reason they did that is they said you could always come back years later and say my attorney was supposed to do this. And so to claim now that the simple fact that the attorney filed the notice of appeal and remained in place is sufficient goes against the very decision that created the requirements that weren't satisfied. Has Lozada ever been applied this strictly in a criminal case where somebody's liberty is at stake? Has it been applied? I can tell you this. In all the decisions that my adversary cited and we cited from the Second Circuit where there had been 1320-16 motion, there had been affidavits by the defendant and hearings where there was sworn testimony. It wasn't done through attorney proffer and attorney say-so, which is the proper way of creating a record in the district court. That's the problem here. I think even in the Second Circuit Perez case, on which Mr. Perez here relies heavily, counsel agreed to file a 212C application and didn't. That was in the record. It was in the record. May I respond with one further point on that? I see my time is up. Not only that, but that defendant learned, right, that his counsel hadn't taken that step and had a motion to reopen pending when he was deported from the country. So that defendant actually tried to exhaust his ineffectiveness claim before leaving, and that was why he satisfied the exhaustion requirement. That's not what Mr. Perez did in this case. He let that opportunity lapse. Thank you very much. Thank you, Mr. Sanders. Rebuttal, Ms. Cassell? Rebuttal. Just a few points, Your Honors. The fact is that counsel did know he was to file a 212C application because he filed one. He filed one that had no merit before the immigration court. He filed a 212C application based on the fact that Mr. Perez was either married to or about to marry a lawful permanent resident and had an American citizen child. It was a changed circumstance application. That's where he switched. Well, what I'm saying is counsel for the government argues that there's nothing to show that Mr. Kleefeld was retained to file a 212C application, and I'm suggesting that he certainly was retained to file a 212C application. At that time, but what matters is the one you wanted him, that your client needed him to file. Yes, a few months later, but certainly when you want us to assume that address Mr. Sanders' point. He says that there's nothing in the record. There's no evidence of record. What do you say to that? Well, Your Honor, first, the evidence of record to show that Mr. Kleefeld was obligated to act at all of this time in Mr. Perez's behalf is the fact that when the BIA sent the letter to him indicating he had 30 days to file a brief or move to reopen, and when they authored their opinion in 1990 alluding to the fact that essentially their hands were tied in granting any relief or taking any action on Mr. Perez's behalf because his counsel had not made a proper application that Mr. Kleefeld was obligated. He was still counsel at that time. He had not filed a motion to be relieved of counsel, which would be the way that somebody would show to the court that they. So your argument is that when an immigration lawyer goes into an immigration court to represent somebody, the engagement necessarily entails the preparation and litigation of a 212C application? Your Honor, a general notice of appearance obligates an attorney to do all things that are legally and ethically applicable to the defense or representation of his client. If he filed a limited notice of appearance or in some way indicated that he. A 212C is a separate, it's a separate deal than trying to fend off notice to appear in a deportation case. It's a separate thing. But he did file a 212C. That was a different one. We're talking about this one. Where is the evidence of record that this lawyer was in harness, that he was obliged by contract by his client to file the additional 212C after the seven year date had passed? Where is the evidence of record of that? Your Honor, I would suggest that once the appellate court indicated that that should be filed, if he was not engaged to do so, he needed to file something with the BIA indicating that he was no longer attorney of record for Mr. Bress. All right. Then, okay, let's assume you're right on that. Why shouldn't we say that your client was obliged in the five month period during 06 or 07 to bring the very attack to the validity of the 1990 deportation order that he now brings? Your Honor, I think that that answer is to some degree understanding what it's like for somebody who's been in the country for 20 years to be arrested on a speeding ticket and to be sent not to Boston but to Maine and to try and figure out why he's there and what happened, to marshal the resources of his family who was in New York to try and contact his family. The stakes couldn't be higher. He's about to be sent out of the country. And you're suggesting just because he's in Maine, he can't be expected to have hired a lawyer or called his family and said, look, they're going to ship me out of the country and it's crazy because they're going to do it on this 1990 order. And as you know, the lawyer never told me about that. We're going to give him a pass on that when the stakes could not have been higher? Your Honor, no. What I'm saying is an alien who speaks limited English, who is arrested after so many years and in an unfamiliar environment, who is trying to both figure out what happened to him, contact his old lawyer, try and get his family to marshal the financial wherewithal to be able to retain a lawyer. While five months to the court may seem like a lengthy period of time, it's not in the life of an alien such as Mr. Perez, who finds himself in this horrific situation after believing all this time that he was in the country legally. Not since 2007. Not since 2006. He didn't believe he was here legally. No, no. I agree. But what I'm saying is in those few months after he was arrested, that was the only time he had to come to grips emotionally, financially. How much time should we allow somebody to have before they have to do something? Your Honor? Five months you say is too little. Five years, is that okay? Your Honor, I don't want to give the court a bright line test, but I think that five months, while it may seem like a long period to the court, simply is not such a long period to somebody like Mr. Perez. Two-page motion to reopen. I move to reopen my case. You're trying to deport me based on a 1990 deportation order that is invalid. It was invalid because my lawyer never even told me about it. He was plainly ineffective. I'm having trouble figuring out why the time and expense involved with something that I just stated that could be done in a page or a page and a half five months is inadequate to do something like that. Does 1326D require this kind of procedure to be done? No. Your defense is under 1326A. Yes. He is not required to do that. He exhausted his administrative remedies. He was prevented from seeking meaningful judicial review before the immigration proceeding, and he suffered prejudice through the incompetence of his attorney. Can I ask one question? I'm looking at the appendix in 78. It's unclear. The copy is unclear at the bottom. But does that paragraph at the bottom, is that the one in which the board, the Immigration Appeals Board, invited counsel to file a motion to remand or some other brief? Yes. And in my copy, unfortunately I believe in all copies, it just simply is not. You can't read that. So he was on notice that the Board of Immigration Appeals was going to act, and they gave him the opportunity to file a motion for remand. And then when I turned two pages over in the appendix, certainly it says in the last paragraph of their decision he has not filed a motion to remand, and neither has he filed an application for Section 212C relief or any other supporting material to establish prima facie eligibility for such relief. So counsel clearly was on, and is there any evidence in the record that he let his client know about this? None, Your Honor. Is there any evidence he didn't? Pardon? Any evidence he didn't? Well, Your Honor, the obligation is on the attorney. That's why a client, especially an alien with limited English and knowledge certainly of immigration rules, hires an attorney to represent him. It is the attorney's obligation. I'm sorry. My question is, is there any evidence that the lawyer didn't notify the client? There's no affirmative evidence that he didn't, but the obligation was on the attorney to take whatever steps were reasonable, and he failed to do that in this case. The case from the Second Circuit seems so very, very much on point, even as to the name that I, and the fact that Justice Sotomayor participated in the opinion, that I ask the Court to consider that case, although from a different circuit, very seriously in this case. Thank you. We understand your argument. The case was very well argued by both sides, and we'll take the matter under advisement.